IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNE TEMPEST, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SCOTT EMEIGH et al., | : | No. 21-3346 |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                        **April 11, 2022**

Before the Court is Defendants Cpl. Patrick Dawe, Lt. James Thomas, and Col. Robert Evanchick's Motion to Dismiss Plaintiff Joanne Tempest's Amended Complaint. (ECF No. 10.) For the reasons that follow, the Court will deny Cpl. Dawe, Lt. Thomas, and Col. Evanchick's motion.

### I. FACTUAL BACKGROUND

Ms. Tempest alleges that, on September 4, 2019, Defendant Tpr. Scott Emeigh confronted and attacked her non-verbal, autistic son M.T., culminating in Tpr. Emeigh deploying his TASER against M.T. multiple times. (ECF No. 9 ¶¶ 21, 28-38.) Ms. Tempest pins Tpr. Emeigh's conduct, in part, on his supervisors' alleged failure to train and supervise him in situations involving confronting and using force against incapacitated persons and individuals with disabilities like M.T. (*Id.* ¶¶ 61-72.) She further alleges that Cpl. Dawe is Tpr. Emeigh's direct supervisor and Lt. Thomas and Col. Evanchick are his indirect supervisors (collectively, the "Supervisory Defendants"). (*Id.* ¶¶ 13-18.)

Ms. Tempest filed suit against Tpr. Emeigh, Tpr. Justin Hood, Cpl. Dawe, Lt. Thomas, Col. Evanchick, the Pennsylvania State Police ("PSP"), and the Commonwealth of Pennsylvania on July 28, 2021. (ECF No. 1.) She amended her complaint on November 22, 2021, removing Tpr.

Hood and the Commonwealth of Pennsylvania as defendants. (ECF No. 9.) The Amended Complaint asserts that Tpr. Emeigh deprived M.T. of his Fourth Amendment right to be secure in his person from unreasonable seizures and uses of force, and that the PSP violated the Americans with Disabilities Act and Rehabilitation Act by, *inter alia*, failing to train its officers to encounter disabled persons such as M.T., which resulted in discrimination against and injuries to M.T. (*Id.* ¶¶ 57-60, 84-87.) The PSP and Tpr. Emeigh answered the Amended Complaint on December 6, 2021. (ECF Nos. 11, 12.)

The Amended Complaint also asserts that the Supervisory Defendants violated M.T.'s Fourth Amendment rights by failing to train and supervise Tpr. Emeigh in connection with responding to and interacting with incapacitated persons and individuals with disabilities like M.T. The Supervisory Defendants filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on December 6, 2021. (ECF No. 10.) Ms. Tempest responded to the motion on December 20, 2021. (ECF No. 13.)

## II.     DISCUSSION

To withstand a 12(b)(6) motion, a complaint must contain enough factual matter, taken as true, to suggest the required elements of the plaintiff's claims and raise a reasonable expectation that discovery will reveal evidence of these elements. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (quotation marks omitted). The Court finds that the Amended Complaint meets this standard, warranting the denial of the Supervisory Defendants' motion.

In order to establish a *Monell*-type liability claim against the Supervisory Defendants in their personal capacities, Ms. Tempest must demonstrate the existence of a policy or custom that caused the constitutional violations and injuries she claims. *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 694 (1978). She also must demonstrate a "direct causal link between [the] policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Where the policy in question concerns the failure to train or supervise, as it does here, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those [supervisees] will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Harris*, 489 U.S. at 388)). Failure to train or supervise amounts to deliberate indifference when: "(1) [] policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

The Amended Complaint plausibly alleges that all three of the Supervisory Defendants supervise Tpr. Emeigh either directly or indirectly. And the Amended Complaint sets forth facts sufficiently suggestive of the "obvious[ness]" and "moral certainty" that the Supervisory Defendants' supervisees, at some point, would need to respond to situations involving persons like M.T. and, accordingly, that the Supervisory Defendants would need to supervise and train them to do so justly. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223-24 (3d Cir. 2014) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997)). At this stage, the Court will not hold against Ms. Tempest the fact that she is without the tools to probe the veracity of the three elements of deliberate indifference set forth by *Carter*; discovery will be necessary to determine, *inter alia*, whether there is a history of the Supervisory Defendants' supervisees mishandling these situations. Accordingly, the Court declines to dismiss the Amended Complaint at this time and will allow Ms. Tempest the opportunity to engage in discovery in connection with her claims against the Supervisory Defendants. *See Est. of King v. City of Jersey City*, Civ. A. No.

3

15-6868, 2018 WL 3201793, at *5 (D.N.J. June 29, 2018) ("The plaintiff should be allowed to pursue discovery to determine if there has been a pattern of excessive force or police brutality among officers of the Jersey City Police Department—and if any training or corrective measures have been taken. I do not say that such a pattern has been established—only that plaintiff may attempt to establish it.").

Ms. Tempest must also show that the Supervisory Defendants had "personal involvement" in violating M.T.'s constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Supervisory Defendants argue that the Amended Complaint does not allege as much, highlighting that Cpl. Dawe was the only Supervisory Defendant physically present on September 4, 2019 and that he arrived on the scene after Tpr. Emeigh TASERed M.T. However, the Amended Complaint alleges that all of the Supervisory Defendants were responsible for training Tpr. Emeigh in situations involving individuals with disabilities like M.T., as well as that they had knowledge of and acquiesced to Tpr. Emeigh's conduct. This is sufficient to meet Ms. Tempest's burden at this stage of the litigation.

The Court will briefly address two of the Supervisory Defendants' other arguments in support of dismissal. First, the Court notes that, although the Supervisory Defendants are state employees, the Eleventh Amendment does not bar *Monell*-type § 1983 claims "where the plaintiff seeks recovery from the personal assets of the individual" brought against such state employees in their personal capacities, as Ms. Tempest did here. *Davis v. Carroll*, 390 F. Supp. 2d 415, 421-22 (D. Del. 2005) (citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990)). Second, the Court declines to dismiss the Amended Complaint on qualified immunity grounds because it finds that it is premature to do so now. Aside from the fact that, following paragraphs of copied-and-pasted statements of case law, the Supervisory Defendants spend only *one sentence* in their motion trying

4

to justify their entitlement to qualified immunity, the Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). Although the Court must weigh that consideration with the notion that immunity questions should be resolved "at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), the brevity of the Supervisory Defendants' application of this doctrine in their motion demonstrates that the factual record is insufficiently developed to consider qualified immunity at this juncture and further supports the "ne[ed] to develop" it before doing so. *Newland*, 328 F. App'x at 791 n.3. The Supervisory Defendants may renew their qualified immunity argument at the summary judgment stage. *See Cottman v. Farabella*, Civ. A. No. 19-14122, 2021 WL 2651036, at *5 n.6 (D.N.J. June 28, 2021); *Wagner v. Cnty. of Montgomery*, Civ. A. No. 10-2513, 2014 WL 4384493, at *6 (E.D. Pa. Sept. 4, 2014); *Taylor v. Pilewski*, Civ. A. No. 08-611, 2008 WL 4200247, at *2 n.2 (W.D. Pa. Sept. 8, 2008).

### III. CONCLUSION

For the reasons stated above, the Supervisory Defendants' motion is denied. The Supervisory Defendants' motion to dismiss the initial Complaint is also denied as moot. (ECF No. 5.) An Order consistent with this Memorandum will be docketed separately.